## WILLIAMS v GROSSMAN

Docket No. 58766. Argued November 2, 1977 (Calendar No. 8). Resubmitted April 3, 1979 (Calendar No. 10).—Decided June 24, 1980. Rehearing denied *post,* 1102.

Everleanna Williams brought an action for damages arising from an automobile collision against Steven A. Grossman, administrator of the estate of Eddie L. Garnett, deceased, and the City of Detroit and the Penn Central Railroad, two years after the Garnett estate had been closed and the administrator discharged by order of the Wayne County Probate Court. Notice of the hearing on claims in the probate proceeding had been given by publication. Plaintiff contends that she was entitled to actual notice of the hearing on claims as an "interested party" under the Probate Code or that she was entitled to notice by the Due Process Clause. The Wayne Circuit Court, George T. Martin, J., granted accelerated judgments for defendants Grossman and the City of Detroit based on the three-month limit on claims against a closed estate and the statute of limitations. The Court of Appeals, V. J. Brennan, P.J., and N. J. Kaufman and R. H. Campbell, JJ., affirmed per curiam (Docket Nos. 25708, 25709). Plaintiff appeals. In an opinion by Justice Levin, joined by Chief Justice Coleman and Justices Kavanagh, Williams, Fitzgerald, and Moody, the Supreme Court *held:*

Although the probate of an estate has been completed and the estate closed, where a person has an action which by statute may be commenced directly against the personal representative of the decedent without first filing a claim against the decedent's probate estate, the administration of the estate is "incomplete" within the meaning of the Probate Code and upon

REFERENCES FOR POINTS IN HEADNOTES

[1-3, 8] 31 Am Jur 2d, Executors and Administrators § 730.

[4] 31 Am Jur 2d, Executors and Administrators § 713.

[5, 6] 79 Am Jur 2d, Wills § 850 *et seq.* .

[7] 31 Am Jur 2d, Executors and Administrators §§ 276, 291.

[9] 5 Am Jur 2d, Appeal and Error § 760.

[10, 11, 13] 31 Am Jur 2d, Executors and Administrators §§ 291-293.

[11, 12] 73 Am Jur 2d, Statutes § 194.

[14, 17] 31 Am Jur 2d, Executors and Administrators §§ 297, 305.

[15, 16] 16A Am Jur 2d, Constitutional Law § 827.

petition the estate may be reopened to provide a suable person so that the action can be commenced. However, because the person having the cause of action has not filed a claim or notice of suit pending in the probate proceeding, recovery of money damages is limited to sources other than assets of the probate estate theretofore distributed, *e.g.*, to sources such as an insurer or the Motor Vehicle Accident Claims Fund.

1. The statute which in general bars actions against the personal representative of a decedent but permits commencement of an action for negligence makes it optional upon the part of the claimant to file a claim based upon a tort in the probate court or to file a tort action in district, common pleas or circuit court. Although the injured claimant may submit his claim to the probate court, ordinarily an action for negligence is commenced and notice of suit pending is often, perhaps even ordinarily, filed in the probate proceeding. Because the principal source for recovery of judgments in automobile negligence cases is liability insurance, not other assets of the defendant or his estate, the probate of the estate of the defendant may proceed to completion although the negligence action is still pending.

2. An action against a decedent is maintained by naming his personal representative as the defendant. A creditor may seek to have an administrator appointed if a family member has not sought administration. The Supreme Court decision that an action cannot be commenced directly against the personal representative of an estate after it has been closed is overruled. The Court has been persuaded that probate and closing of an estate should not bar an action that may yet, within the applicable statute of limitation, be commenced directly against the personal representative of the decedent. Just as the failure of heirs to probate a decedent's estate does not preclude the commencement of an action, neither should the closing of an estate preclude the commencement of an action which otherwise is authorized. The result reached by the overruled decision is not consistent with the provision of the Probate Code authorizing the commencement of actions directly against the decedent's personal representative.

3. The statute authorizing the reopening of a closed estate provides that the failure of a claimant to file a claim against the estate "shall not be a cause" for reopening it. Plaintiff Williams is not, however, a "claimant" seeking to reopen the estate for the purpose of filing a claim payable out of probate assets. Rather, she seeks its reopening so that she can file an action against the decedent's personal representative to reach

assets other than those of the probate estate. Probate will not ordinarily be granted unless there are assets upon which the proceedings can operate, but a decedent's right to be indemnified under a policy of insurance may be deemed an asset for this purpose. Even if the defendant in an action for negligence is a pauper, the judgment may be satisfied from his insurance, or by the Motor Vehicle Accident Claims Fund if he is uninsured, and a pauper's estate may be probated solely to create a suable defendant to pursue the pauper's right of indemnification from has insurer or to maintain an action against a known uninsured driver to obtain payment from the Motor Vehicle Accident Claims Fund.

4. The purpose of the non-claim provisions of the Probate Code is to facilitate the administration of estates, the payment of creditors, and the distribution of assets. Relieving insurers and the Motor Vehicle Accident Claims Fund of their obligations on a random basis, depending on whether a defendant's estate has been "closed" before the action for negligence is commenced, does not serve any apparent legislative purpose. Furthermore, it serves no interest of the decedent's heirs, creditors, personal representative, or probate estate, or of the probate court. The non-claim provisions are a part of the procedure established where payment is sought out of assets which must be probated. That procedure is not mandatory where certain causes of action are asserted and any recovery does not depend on assets which must be probated; in such a case the statute permits an action directly against the personal representative. The statutory right to proceed directly cannot be exercised unless there is a personal representative against whom the suit may be brought. Providing such a personal representative is part of the business of administering the estate, and administration is not complete as long as a person has a cause of action he can yet bring against a personal representative.

5. In this case, the action against defendant Grossman, the former representative of Eddie L. Garnett's closed estate, and the other defendants was commenced within the statutory three-year limitational period. In the circumstances of this case, there is nothing to be gained by remanding to the probate court for the appointment of a successor fiduciary. The plaintiff's petition for administration is treated as a petition to reopen the decedent's estate and defendant Grossman is ordered appointed the successor fiduciary, *nunc pro tunc*. It is unnecessary to decide in this case whether the personal representative of a decedent must give notice by mail to known

creditors of a decedent because even if it were decided that such notice is required, Grossman could reasonably rely on the past practice of not giving such notice, and a personal judgment against him would not be justified. Defendant Will Garnett, Jr., who received the assets of the probate estate, does not appear to have been served with process in this case. Therefore, any declaration on the notice issue would not be binding on him.

Reversed and remanded to the circuit court for trial.

Justice Ryan dissented. He wrote:

Justice Ryan, dissenting, would address only the issue on which leave to appeal was initially granted in this case, whether a person having a cause of action for negligence against a decedent is entitled to actual notice of the time for filing and the hearing on claims against the decedent's estate, rather than the one addressed by the Court.

1. The Court's supplemental order granting leave to appeal did not adequately apprise the parties of the issue that the Court apparently wanted to address and consider, whether the Probate Code may properly be interpreted as precluding the bringing of all actions against the personal representative within the applicable limitation period but after three months following the closing of the estate. The order, however, instructed the parties to address whether the Court should overrule a case which concerned the meaning of the statutory term "after discovered asset". The parties did not know how that case was relevant to the issues they briefed and told the Court so.

2. The problem before the Court is not fashioning a remedy for the plaintiff but determining the correct interpretation of the statutes on administration of estates. The Court, in seeking a remedy for the plaintiff, not only overrules one case, but also ignores a long line of firmly established precedent holding that a statute limiting the time during which claims against a deceased person may be filed is to be strictly construed. The rule with respect to the closing of estates has been that a claimant must file his claim in probate court before the estate closes or within three months thereafter, or he may pursue his remedies in circuit court before the estate closes. While the Court is free to overrule existing precedent, it still must contend with the plain and unambiguous meaning of the statutory language which provides that failure of the claimant to file a claim during the administration of an estate shall not be a cause for reopening of the estate. The task of determining the proper and just period for making claims against the estate

must be left to the Legislature, and the judiciary is to interpret the statute before it.

3. The plaintiff argues that she was entitled to notice of the claims hearing as an "interested party". A common-sense reading of the former Probate Court Rules suggests that the list of "interested parties" was not intended to be exhaustive; the rule was not meant to exclude other known persons from receiving actual notice where they have significant interests in the assets of the estate and where the disposition at such a hearing would materially affect their rights. The rule also authorizes a probate judge to require that actual notice be given to persons not specifically listed as "interested" parties. The plaintiff, as a potential tort creditor of the estate, may be an interested party and thus entitled to actual notice if she was an interested party "known" to the personal representative of the estate.

4. The plaintiff also argues that, because of her interest as a potential creditor of the estate, she is entitled to actual notice under the Due Process Clause. The Court has clearly recognized that an accrued cause of action is a significant interest in property within the meaning of the Due Process Clause and that it may not arbitrarily be impinged upon. The plaintiff may not be deprived of her interest without adequate notice and an opportunity to be heard which is appropriate to the nature of the case. There is no hard and fast rule for determining when actual notice is required. Instead a balancing test is used to weigh the burdens of providing the notice against the interest of the property owner in receiving adequate notice. The kind of notice required depends on the circumstances of the case and the availability and cost of other means of notice. There may be a significantly different and greater burden imposed upon the personal representative who is obligated to ascertain the existence of a potential tort claimant than the burden imposed upon a person required to ascertain the existence of a beneficiary of a trust, an owner of real property, or a lien creditor. Such a determination could entail making a legal judgment, a professional opinion, whether a person had a viable tort claim against the estate which was likely to be pursued. However, once the tort claim is filed in probate court or a complaint is filed in circuit court, or the claimant otherwise indicates to the personal representative that he will proceed against the estate, the claim becomes easily ascertainable to the personal representative and a legal judgment as to the claim's validity is no longer required.

5. A tort claimant is "known" and therefore entitled to actual notice under the statute where he has taken steps to

pursue his claim against the estate (by filing a claim or a complaint, or by engaging in settlement negotiations with a representative of the decedent), or has manifested an intent to pursue his remedies and has communicated that intent in some fashion to the personal representative. The mere fact that the personal representative has knowledge of an event which could lead to liability is not sufficient to make a claimant known, because that knowledge does not remove the overwhelming burden of evaluating the potential liability. Providing actual notice to tort claimants who have made their interests "known" and notice by publication to others is compatible with the requirements of the Due Process Clause. In this case the factual issue whether the plaintiff's claim was "known" to the personal representative was not before the court. The matter should be remanded for a determination of this issue.

70 Mich App 589; 246 NW2d 312 (1976) reversed.

*In re Curzenski Estate*, 384 Mich 334; 183 NW2d 220 (1971), overruled.

OPINION OF THE COURT

1. EXECUTORS AND ADMINISTRATORS — DECEDENTS' ESTATES — DELAYED CLAIMS — PERSONAL REPRESENTATIVES.

The administration of a decedent's estate is "incomplete" within the meaning of the Probate Code, although the probate of the estate has been completed and the estate closed, where a person has an action which by statute may be commenced directly against the personal representative of the decedent without first filing a claim against his probate estate; upon petition the estate may be reopened to provide a suable person so that the action can be commenced (MCL 700.593, 700.741; MSA 27.5593, 27.5741).

2. EXECUTORS AND ADMINISTRATORS — DECEDENTS' ESTATES — DELAYED CLAIMS — PERSONAL REPRESENTATIVES — DISTRIBUTION OF ASSETS.

Recovery of money damages by a person who has an action which by statute may be commenced directly against the personal representative of a decedent without first filing a claim against his probate estate, where the probate of the estate has been completed and the estate closed, is limited to sources other than assets of the probate estate theretofore distributed, *e.g.*, sources such as the estate's right of indemnification from an insurer or the obligation of the Motor Vehicle Accident Claims Fund to compensate victims of uninsured drivers (MCL

257.1101 *et seq.,* 700.593, 700.741; MSA 9.2801 *et seq.,* 27.5593, 27.5741).

3. EXECUTORS AND ADMINISTRATORS — DECEDENTS' ESTATES — CLAIMS — ACTIONS — NEGLIGENCE — PERSONAL REPRESENTATIVES.

The statute which in general bars actions against the personal representative of a decedent but permits commencement of an action for negligence makes it optional upon the part of a claimant to file a claim based upon a tort in the probate court or file a tort action in district, common pleas or circuit court (MCL 700.741; MSA 27.5741).

4. EXECUTORS AND ADMINISTRATORS — DECEDENTS' ESTATES — ACTIONS — PARTIES — PERSONAL REPRESENTATIVES.

An action against a decedent is maintained by naming his personal representative as the defendant (MCL 700.741, 708.22; MSA 27.741, 27.3178[432]).

5. EXECUTORS AND ADMINISTRATORS — DECEDENTS' ESTATES — ASSETS — INSURANCE.

Probate will ordinarily not be granted unless there are assets upon which the proceedings can operate; a decedent's right to be indemnified under a policy of insurance may be deemed an asset for this purpose.

6. EXECUTORS AND ADMINISTRATORS — DECEDENTS' ESTATES — ACTIONS — NEGLIGENCE — PERSONAL REPRESENTATIVES — INDIGENTS.

A pauper's estate may be probated solely to create a suable defendant to pursue the pauper's right of indemnification from his insurer or to maintain an action against a known uninsured driver to obtain payment from the Motor Vehicle Accident Claims Fund.

7. EXECUTORS AND ADMINISTRATORS — DECEDENTS' ESTATES — PROBATE CODE — LEGISLATIVE PURPOSE.

The purpose of the non-claim provisions of the Probate Code is to facilitate the administration of estates, the payment of creditors of the estate probated, and the distribution of assets (MCL 700.725, 700.732; MSA 27.5725, 27.5732).

8. EXECUTORS AND ADMINISTRATORS — DECEDENTS' ESTATES — PERSONAL REPRESENTATIVES.

Providing a personal representative of a decedent against whom an action for negligence may be brought is part of the business of administering a decedent's estate; administration is not complete as long as a person has a cause of action he can yet

bring against a personal representative (MCL 700.593, 700.741; MSA 27.5593, 27.5741).

DISSENTING OPINION BY RYAN, J.

9. APPEAL — ISSUES ON APPEAL.

*The Supreme Court should reach the issue it chose to address when it granted leave to appeal in a case, rather than conjuring up issues and positing arguments for parties who failed to raise those issues on their own; but where the Court choses to raise a supplemental issue the parties must be fairly apprised of the issue the Court is instructing them to address.*

10. EXECUTORS AND ADMINISTRATORS — DECEDENTS' ESTATES — DELAYED CLAIMS.

*A statute limiting the time during which claims against a deceased person may be filed is to be strictly construed; the firm rule has been that once the decedent's estate is closed the Probate Code provides a three-month period during which tardy claimants may seek the reopening of the estate for the hearing of their claims, but thereafter the estate may not be reopened except for the purpose of correcting errors or omissions (MCL 701.19, 704.56; MSA 27.3178[19], 27.3178[307]).*

11. EXECUTORS AND ADMINISTRATORS — DECEDENTS' ESTATES — DELAYED CLAIMS.

*A holding that a tardy claimant may be permitted, upon petition, to reopen a decedent's estate ignores the plain and unambiguous meaning of the language of the Probate Code and thus violates a rule of statutory construction which no court can safely disregard (MCL 704.56; MSA 27.3178[307]).*

12. STATUTES — CONSTRUCTION.

*Courts may give a sensible and reasonable interpretation to legislative expressions which are obscure, but where the statute is plain and unambiguous in its terms the courts have nothing to do but to obey it; the fair and natural import of the terms employed, in view of the subject matter of the law, is what should govern.*

13. EXECUTORS AND ADMINISTRATORS — DECEDENTS' ESTATES — DELAYED CLAIMS — NEGLIGENCE.

*The clear and unambiguous meaning of the Probate Code precludes a decedent's estate from being reopened after three months following its closing in order to permit a tardy claimant to bring an action for negligence against the decedent's personal representative, and thereby avoid the effect of a shorter*

*period of limitation under the Probate Code; whether the claimant expects recovery from assets previously distributed by the personal representative, from proceeds under a liability policy or a government fund is immaterial (MCL 701.19, 704.56, 708.22; MSA 27.3178[19], 27.3178[307], 27.3178[432]).*

14. EXECUTORS AND ADMINISTRATORS — DECEDENTS' ESTATES — CLAIMS — NOTICE — INTERESTED PARTIES.

*The former Probate Court Rule which listed certain interested parties entitled to receive actual notice of the hearing on claims against a decedent's estate was not intended to be an exhaustive list of interested parties; the persons listed are ones who, under all circumstances, were to be "interested parties", but the rule did not exclude other known persons from receiving actual notice of a hearing on claims where they had significant interests in the assets of the estate and where the disposition of the hearing would materially affect their rights (MCL 701.32; MSA 27.3178[32]; PCR 18).*

15. ACTIONS — DUE PROCESS — INTEREST IN PROPERTY.

*An accrued cause of action, although it may be intangible, is a significant interest in property within the meaning of the Due Process Clause; a plaintiff may not be deprived of that interest without the procedural protection provided by the Due Process Clause, which guarantees notice and an opportunity to be heard appropriate to the case (US Const, Am XIV; Const 1963, art 1, § 17).*

16. CONSTITUTIONAL LAW — DUE PROCESS — NOTICE — INTEREST IN PROPERTY.

*Due process in any proceeding affecting an interest in property which is to be accorded finality requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections; the kind of notice required depends on the circumstances of the case and the availability of other means, in both a theoretical and economic sense, and whether actual notice is required depends upon a weighing of the burdens of providing actual notice against the interest of the property owner in receiving adequate notice (US Const, Am XIV; Const 1963, art 1, § 17).*

17. EXECUTORS AND ADMINISTRATORS — DECEDENTS' ESTATES — CLAIMS — NOTICE — INTERESTED PARTIES — DUE PROCESS.

*A person who has a tort claim against the estate of a decedent is "known" and therefore entitled to personal notice of the time*

*for filing and hearing on claims against the estate where he has
taken some steps toward pursuing his legal remedies against
the decedent's estate, either by filing a claim or complaint or
engaging in settlement negotiations with a representative of
the decedent, or has manifested an intent to pursue his reme-
dies and'has communicated that intent to the personal repre-
sentative; the mere fact that a personal representative has
knowledge of an event which could lead to liability is not
sufficient to require actual notice to the injured party under
the Probate Code or the Due Process Clause (US Const, Am
XIV; Const 1963, art 1, § 17; MCL 701.32; MSA 27.3178[32]).*

*Harry D. Hirsch, Jr. (E. R. Whinham, Jr.,* of
counsel), for plaintiff.

*Hyman, Gurwin, Nachman, Friedman & Winkel-
man* (by *A. Benjamin Henson)* for defendant Gross-
man.

LEVIN, J. Everleanna Williams, the plaintiff, was
a passenger in an automobile driven by Eddie Lee
Garnett when it struck a railroad viaduct and he
was killed. Williams commenced this action in
circuit court against the administrator of Garnett's
estate, Steven A. Grossman, and others,[1] within
the three-year limitational period, but over two
years after an order had been entered in the
probate court closing the estate. No notice of the
hearing on claims or of the pendency of probate
proceedings had been given to Williams other than
such as is provided by newspaper publication.

---

[1] The other defendants are the City of Detroit, the Penn Central
Railroad Company, and decedent's father, Will Garnett, Jr. The
automobile hit an abutment of a viaduct of the railroad. It was
claimed that the city and railroad had taken inadequate precautions
to safeguard the traveling public in respect to the abutment. The
residue of the estate, $6,794.70, was distributed to Will Garnett, Jr.

An accelerated judgment was entered in favor of the city because of
the failure to commence the action within two years. The equal
protection challenge to the validity of that limitation was decided
adversely to Williams' contentions in *Forest v Parmalee,* 402 Mich
348; 262 NW2d 653 (1978).

The circuit judge granted Grossman's motion for accelerated judgment on the ground that Williams had failed to file a claim in the probate estate or to commence this action before the estate was closed.[2] The Court of Appeals affirmed.

We granted leave to appeal to consider whether a person having a cause of action for negligence against a decedent is entitled to notice, in addition to whatever notice is provided by newspaper publication, of the time for filing and the hearing on claims against the decedent's estate.

We subsequently asked the parties to file supplemental briefs on "[w]hether *In re Curzenski Estate,* 384 Mich 334 [183 NW2d 220] (1971), should: (a) be overruled and, if so, (b) whether there is any need to reach and decide the issue of whether probate court notice procedures are constitutionally [adequate]". In that case this Court declared that an action cannot be commenced directly against the personal representative of an estate after it has been closed.

We overrule *In re Curzenski Estate.* Although the probate of an estate has been completed and the estate closed, where a person has an action which by statute may be commenced directly against the personal representative of the decedent without first filing a claim against his probate estate,[3] the administration of the estate is "incomplete" within the meaning of the statute and upon

---

[2] Grossman also relied on the three month limitation on rehearing a probate court order. MCL 701.19; MSA 27.3178(19). There appears to be no corresponding limitational period in the Revised Probate Code, effective July 1, 1979.

[3] MCL 708.22; MSA 27.3178(432). See fn 9, *infra,* for text. The corresponding provision of the Revised Probate Code is MCL 700.741; MSA 27.5741.

petition the estate may be reopened[4] to provide a
suable person so that the action can be com-
menced. Because the person having the right of
action has not filed a claim in the probate proceed-
ing (or, before it was closed, notice of suit pend-
ing), recovery of money damages is limited to
sources other than assets of the probate estate
theretofore distributed, *e.g.,* to sources such as the
estate's right of indemnification from an insurer or
the obligation of the Motor Vehicle Accident
Claims Fund[5] to compensate victims of uninsured
drivers.[6]

We see no need to decide whether notice should
have been given to known creditors[7]—the issue on

---

[4] MCL 704.56; MSA 27.3178(307). See fn 12, *infra,* for text. The
corresponding provision of the Revised Probate Code is MCL 700.593;
MSA 27.5593.

[5] MCL 257.1101 *et seq.;* MSA 9.2801 *et seq.*

[6] The enabling act establishing the MVACF does not apply to
accidents occurring after January 1, 1976, the effective date of 1975
PA 322, MCL 257.1133; MSA 9.2833.

[7] The trial court did not make any finding on the issue of whether
Grossman knew of the existence of Williams and of her possible cause
of action. That factual issue was not framed by the motion for
accelerated judgment. There is no supporting affidavit directed to that
issue. Since the factual issue of whether Williams or her claim or her
intention to file a claim was known to Grossman was not framed by
Grossman's motion, Williams was not obliged to respond to that
factual issue.

It appears from the probate court file that Grossman was in
possession of records which revealed the existence of Williams and
the likelihood that she had a cause of action for negligence against
the decedent. Grossman's final accounting with the probate court
charges the estate with the cost of obtaining a copy of the Detroit
Police Department accident report. The accident report, a public
record, shows Williams to have been a passenger in the decedent's
automobile when it struck the abutment causing his death, and states
her residential address. It also appears to indicate that she was taken
to a hospital. The medical examiner's report, included in the accident
report, indicates that the decedent was intoxicated. See *Huben-
schmidt v Shears,* 403 Mich 486; 270 NW2d 2 (1978). It is a reasonable
inference that a passenger in a one-car accident which caused the
driver's death within an hour and a half has suffered some injury and
has a cause of action against the decedent.

It thus appears that Grossman may have been on notice that

which we first granted leave to appeal. All the
assets of this probate estate have been distributed
to Will Garnett, Jr. Although he was named as a
defendant in this action, he has not been served;
accordingly, a determination that notice should
have been given could not be the basis of a money
judgment against him. Nor, considering the state
of the law and the practice at the time of the
asserted failure to give notice, would such a deter-
mination justify a personal judgment against the
former fiduciary for failing to give such notice.

## I

While a person with a cause of action in negli-
gence against a decedent may file a claim in the
probate court, this is rarely, if ever, done.

A statute, which in general bars actions against
the personal representative of a decedent, permits
commencement of an action for negligence,[8] and
provides that if the plaintiff files notice of suit
pending in the probate court the assignment of
property to heirs and payment of most debts shall
be deferred until the litigation is concluded.[9]

Williams might assert a cause of action and had an address to which
notice of the time for filing claims and of the hearing on claims could
have been sent.

Our disposition makes it unnecessary to remand for fact-finding on
the issue whether Williams was a known creditor.

[8] An action for negligence is referred to in the statute (see fn 9,
*infra*) under its historic appellation, as an action for trespass on the
case. See Koffler & Reppy, Common Law Pleading, ch 8, pp 173 *et
seq.,* and Shipman, Common-Law Pleading (3d ed), ch 4, pp 83 *et seq.*

[9] The statute provides:

"No action shall be commenced against the executor or administra-
tor, except actions of ejectment, or other actions to recover the seizin
or possession of real estate, and actions of replevin and trespass on
the case and any other action in which the deceased might have been
properly joined with others as a party defendant, nor shall any
attachment or execution be issued against the estate of the deceased,
until the expiration of the time limited by the court for the payment
of debts: Provided, That such action shall be brought in the circuit

This Court has held that the statute makes "it optional upon the part of a claimant to file a claim based upon a tort in the probate court or file a tort action in the circuit court".[10]

While a person asserting that he has been damaged by a decedent's negligence may thus submit his claim to the probate court, ordinarily a negligence action is commenced in district, common pleas or circuit court.

The principal source for recovery of judgments rendered in automobile negligence cases is automobile liability insurance, not other assets of the defendant or of his estate. When the defendant dies and his estate is probated, notices of suit pending often, it appears perhaps even ordinarily, are not filed in the probate proceeding. The probate of the estate proceeds apace without regard to any automobile negligence action pending against the decedent or the personal representative of his estate. The estate is fully administered, creditors are paid and assets are distributed to heirs although the negligence action is still pending.

court of any county having jurisdiction of the parties. Plaintiff may file in the probate court having jurisdiction of said estate a notice of suit pending. After the filing of such notice no assignment of property to heirs, nor payment of debts, or other distribution shall be made to creditors within the fifth class except said probate court may authorize such distribution in case the executor or administrator retains sufficient assets to secure said plaintiff payment of the judgment recovered including costs. The final judgment rendered in such action shall be certified to the probate court by the county clerk upon the same becoming final whereupon such judgment shall have the same effect as all other approved claims of the same class against said estate." MCL 708.22; MSA 27.3178(432). The corresponding provision of the Revised Probate Code is MCL 700.741; MSA 27.5741.

The statute provides that "[a]ll other debts" are of the fifth class; debts of the first through fourth classes are necessary funeral expenses, debts to the United States, expenses of last sickness, and certain debts due the State of Michigan. MCL 708.10; MSA 27.3178(420). The corresponding provision of the Revised Probate Code is MCL 700.716; MSA 27.5716.

[10] In re Chamberlain's Estate, 298 Mich 278, 287; 299 NW 82 (1941).

A

An action against a decedent is maintained by naming his personal representative as the defendant. If administration has not been sought by a spouse or other family member, a creditor may seek to have an administrator appointed.[11]

In the instant case, an administrator was appointed on June 22, 1972, and the estate was closed 8-1/2 months later on March 6, 1973, less than one year after the automobile accident on March 19, 1972.

A section of the Probate Code permits reopening an estate for the purpose of administering "after discovered assets *or* to complete the administration of the same in case said estate was closed without being fully administered by the fiduciary or court * * *: Provided, however, That the failure of a claimant to file a claim against said estate during the original administration thereof shall not be a cause for reopening the same or for the appointment of a successor fiduciary". (Emphasis supplied.)[12]

In *Kangas v Lefko*, 369 Mich 341; 119 NW2d 645

---

[11] MCL 702.51; MSA 27.3178(121); 13 Callaghan's Michigan Pleading & Practice, § 101.06. The corresponding provision of the Revised Probate Code is MCL 700.115; MSA 27.5115.

[12] "After allowance of the final account and entry of order for distribution, the fiduciary shall make distribution, taking receipts for the same, and upon filing such receipts and the receipts showing payment of the inheritance tax or the issuance of an order determining that no tax is payable, he may be discharged and his bondsmen released.

"The court may, upon petition having been filed after the closing of an estate, cause the same to be reopened for the purpose of administering after discovered assets or to complete the administration of the same in case said estate was closed without being fully administered by the fiduciary or court, or for the correction of typographical errors, omissions, or misdescription of property contained in any order or record in said estate, and for any of these purposes may appoint a successor fiduciary: Provided, however, That the failure of a claimant to file a claim against said estate during the original administration

(1963), the facts paralleled this case except the estate there had not been "closed".[13] Plaintiff was injured in an automobile accident and the driver of the other automobile was killed. The estate of the driver was fully administered, the final account was approved, the administrator was discharged, but words to the effect that "the estate is closed" were not included in the order. Over four months later,[14] the plaintiff sought to have the estate reopened. The motion was granted and a negligence action was commenced. Also, a claim was filed in the estate.

In affirming the denial of a motion to dismiss the action, two justices relied on alternative grounds: (i) a claim was filed with the probate court within 18 months of the time originally fixed for the presentation of claims and before the estate was closed,[15] and (ii) the action had been commenced in the circuit court while the estate was still open. Three justices, stating their agreement in the result, said that a negligence action "depends on no claim filed in probate", *id.,* p 344, and that the only question was whether there was a legally suable defendant and held that there was one because the estate was still open: "the estate has not as yet been closed for want of a probate order of closing." *Id.,* p 345.[16]

In *In re Curzenski Estate, supra,* the estate had been closed. While that case might be distin-

thereof shall not be a cause for reopening the same or for the appointment of a successor fiduciary." MCL 704.56; MSA 27.3178(307).

[13] In Garnett's estate the judge "ordered that Steven A. Grossman be and he is hereby discharged as administrator, his bond cancelled and the estate closed".

[14] See fn 2, *supra.*

[15] See MCL 708.18; MSA 27.3178(428). The corresponding provision of the Revised Probate Code is MCL 700.732; MSA 27.5732.

[16] The three justices added that the disposition of the tort claim was not before the Court and not in issue.

guished on its facts,[17] this Court declared that ordinarily[18] no action may be commenced in the circuit court against a decedent after the estate is closed.[19] The Court said that liability insurance is not an "after discovered asset" and therefore a closed estate may not be reopened on that basis.[20]

## B

We are persuaded that probate and closing of an

---

[17] Plaintiff's counsel in *In re Curzenski Estate,* 384 Mich 334; 183 NW2d 220 (1971), was aware of the probate proceedings. In this case it appears that Williams did not engage counsel until after the estate had been closed.

[18] See the quotation from *In re Curzenski Estate,* in fn 20, *infra,* in which the Court states that where there are unusual circumstances, *e.g.,* fraud, a different result may be appropriate.

[19] But see *In re Critchell Estate,* 361 Mich 432; 105 NW2d 417 (1960). Four justices of the eight-member court (one justice not participating), declared that an order of a probate judge treating an automobile liability policy as yet to be administered, and ordering the reopening of an estate, is unassailable. The administrator cannot appeal because he derives his authority from the order appointing or reappointing him. A widow or heir cannot appeal because the distribution of assets is not being attacked. The insurer cannot appeal because it has no interest in the estate. The justices declared:

"[T]he sole purpose was to enable him to bring action against the estate and in the event of recovery of a judgment to seek enforcement against the insurance company in accordance with the terms of its policy. In such policy appellant Ethelyn Critchell has no interest, and there is no attempt to reach what she has heretofore received." *Id.,* p 450.

[20] "As this latest 'mournful result' *(Melvin [v Reading,* 346 Mich 348, 353; 78 NW2d 181 (1956)]) comes to record in our books, it is in order that mention be made of a fact all concerned with cases as at bar should carefully consider. It is that our courts must decide them as if no liability insurance existed. Any liability which accrued against a decedent during his lifetime became *his* liability, whether he had that liability insured or not. When he dies his fiduciary must respond whether the injured person has or has not sued before the death occurred. Hence, if the person injured has not sued prior to the death, and has not made timely claim against the decedent's estate or commenced timely suit against the latter's fiduciary (see *Kangas v Lefko,* [369 Mich 341; 119 NW2d 645 (1963)]), no remedy survives save upon some showing of fraud committed by any one or several whom equity may hold responsible for the consequences of that fraud. Such is the purpose as well as the effect of our probate code." *In re Curzenski Estate, supra,* pp 337-338 (emphasis in original).

estate should not bar an action that may yet, within the applicable statute of limitation, be commenced directly against the personal representative of the decedent. Just as the failure of heirs to probate a decedent's estate does not preclude the commencement of an action, neither should the closing of an estate preclude the commencement of an action which otherwise is authorized.

The result reached in *Curzenski* is not consistent with the provision of the Probate Code authorizing the commencement of actions directly against the decedent's personal representative. The question before us does not concern the time or procedure for filing claims against the probate estate but, rather, the means of providing a suable defendant for an action which the statute authorizes to be commenced directly against the decedent's personal representative.

The section of the statute authorizing the reopening of a closed estate provides that the failure of a "claimant" to file a "claim" against the estate during the original administration thereof "shall not be a cause" for reopening it. Williams is not, however, a "claimant" seeking to reopen the estate for the purpose of filing a claim payable out of probate assets, but, rather, seeks its reopening so that she can file an action against the decedent's personal representative in an attempt to vindicate her right to proceed against him directly with a view to reaching assets other than those of the probate estate.

The statute (see fn 9 for text) provides that an action of ejectment or to recover the possession of real estate and actions of replevin and trespass on the case (negligence) and any other action in which the decedent might have been properly joined with others as a party defendant may be

commenced directly against the personal representative of the decedent, without requiring the filing of a claim against the decedent's probate estate.

While it has been said that probate will not ordinarily be granted unless there are "assets of some actual value upon which the proceedings can operate",[21] a decedent's right to be indemnified under a policy of insurance may be deemed an asset for this purpose.[22]

A person who has obtained a judgment for negligence may be able to collect it without regard to whether the defendant has "assets" or is financially responsible. Even if he is insolvent or bankrupt,[23] his insurer must nevertheless defend the action and pay if a judgment is rendered for plaintiff. Similarly, the Motor Vehicle Accident Claims Fund is obliged to pay if a judgment is rendered against an insolvent uninsured motorist.[24]

---

[21] 13 Callaghan's Michigan Pleading & Practice, § 101.03, p 5.

[22] See Anno: *Liability insurer's potential liability to estate dependent upon establishment of claim against estate, as justifying grant of administration under statutes making existence of assets or property a condition of grant*, 67 ALR2d 936.

Since automobile liability insurance policies, in terms, protect and indemnify the insured, it was frequently held that the injured person was not a third-party beneficiary. Where insurance is compulsory, as in Michigan, the injured person is generally regarded as a third-party beneficiary and the tendency of decisions is to reach that result without regard to statutory requirements. Anno: *Joinder of insurer and insured under policy of compulsory indemnity or liability insurance in action by injured third person*, 20 ALR2d 1097; 4 Corbin on Contracts, § 807, p 211; 18 Couch on Insurance (2d ed), §§ 74:538 *et seq.*, pp 527 *et seq.* Joinder of the insurer is not permitted in Michigan. MCL 500.3030; MSA 24.13030.

[23] MCL 500.3006; MSA 24.13006.

[24] In the instant case it is asserted in the supplemental brief of the appellee that the "decedent in this case had no automobile liability insurance in effect at the time of the subject accident". That assertion has not been the subject of an evidentiary determination. If there was no automobile liability insurance, the plaintiff probably had a right of action against the MVACF. If no claim has been filed, the MVACF

A negligence action can thus be maintained although the defendant is a pauper, and a pauper's estate may be probated solely to create a suable defendant to realize on the pauper's right of indemnification from his insurer or to enable maintenance of an action against a known uninsured driver with a view to payment by the MVACF.

By reason of *Curzenski,* however, if a fiduciary has closed the estate of the pauper or of a man of wealth, another plaintiff, perhaps asserting a claim arising out of the same tortious act which prompted probate, cannot maintain an action even though there may be several years left to run in the statute of limitation. The effect of the closing of the estate may, as here, be to shorten the three-year statute of limitation generally applicable to negligence actions[25] to less than one year.

A person having a cause of action for negligence may commence an action at any time within the three-year period although the defendant has died and his estate has been fully probated with any assets distributed, as long as it has not been closed, and look to the decedent's insurer or the MVACF for recovery. If the estate has been "closed", however, a person with a cause of action may not, because of *Curzenski,* commence an action and recover from an insurer or the MVACF, although the action is filed within the three-year limitational period and although no recovery is sought from the heirs or other creditors paid with assets of the estate.

The purpose of the non-claim provisions of the Probate Code[26] is to facilitate the administration of

---

might have a defense to a delayed claim. See *Carver v McKernan,* 390 Mich 96; 211 NW2d 24 (1973).

[25] MCL 600.5805; MSA 27A.5805.

[26] MCL 708.18; MSA 27.3178(428). The corresponding provision of the Revised Probate Code is MCL 700.732; MSA 27.5732.

estates, the payment of creditors and the distribution of assets to heirs and legatees. Relieving insurers and the MVACF on a random basis of their obligations does not serve any apparent legislative purpose.

The distinction between decedents whose estates have not been probated at all or whose estates have not been closed, on the one hand, and those whose estates have been probated and closed, on the other, serves no interest of the decedent's heirs, creditors, personal representative or probate estate or of the probate court. It does not appear that there is any legislative purpose to relieve fortuitously a decedent's insurer of its contractual obligations or the MVACF of its statutory obligations.

The non-claim provisions are a part of the procedure established for determining claims against the personal representative where payment is sought out of assets which must be probated. That procedure is not mandatory where certain causes of action are asserted and the circumstances are such that any recovery does not depend on assets which must be probated; in such a case the statute permits an action to be maintained directly against the personal representative. The right to proceed in this manner cannot be exercised unless there is a personal representative against whom the suit may be brought. Providing such a personal representative is therefore part of the business of administering an estate. Administration is not complete as long as a person has a cause of action he can yet bring by suing a personal representative.

The *Curzenski* construction of the statute serves no purpose of the non-claim provision of the Probate Code and frustrates the provision of the stat-

ute authorizing the commencement of actions directly against the decedent's personal representative.

## C

We conclude that the administration of a decedent's estate is "incomplete", within the meaning of the statute, to the extent a person may yet commence an action against the decedent's personal representative under the statute. Upon request of a person asserting a cause of action that may be so maintained, a closed estate shall be reopened so that an action may be commenced against a successor fiduciary.

In the instant case a petition to probate Garnett's estate was filed by Williams within the three-year statute of limitation.[27] The petition was denied when it developed that the estate had previously been probated and closed. Because of *Curzenski* no useful purpose would have been served by filing a petition to reopen the estate. This action against Grossman, the former personal representative of Garnett's closed estate, and the other defendants was commenced within the three-year limitational period.

In the circumstances of this case, we see nothing to be gained by remanding to the probate court for the appointment of a successor fiduciary. Pursuant to GCR 1963, 865, providing that this Court may "make any order which ought to have been given or made", we treat Williams' petition for adminis-

---

[27] Since the filing of that petition or of a petition for reopening the estate and the appointment of a successor fiduciary is necessary to maintenance of the action, such filing should operate as does filing a complaint and putting process in the hands of a process server (see MCL 600.5856; MSA 27A.5856) to toll the statute of limitation until a fiduciary is appointed provided that the plaintiff proceeds diligently in prosecuting the petition.

tration as a petition to reopen the decedent's estate and order Grossman appointed the successor fiduciary, *nunc pro tunc,* so that there was a suable person. This action was duly and timely commenced when he was served.

II

There is no need to decide in the instant case whether the personal representative of a decedent must give notice by mail to known creditors of the decedent. Even if we were to hold that a tort claimant is entitled to such notice in addition to whatever notice newspaper publication provides and that the estate should not have been closed without such notice, such a determination would not, considering the state of the law and the practice at the time of the asserted failure to give notice, justify a personal judgment against Grossman for failing to give such notice.

Personal representatives could reasonably rely on the past practice of not giving such notice. Courts generally have held that the *Mullane* [28] doctrine does not apply to probate estates.[29] *In re*

[28] *Mullane v Central Hanover Bank & Trust Co,* 339 US 306; 70 S Ct 652; 94 L Ed 865 (1950).

[29] See *Brunell Leasing Corp v Wilkins,* 11 Ariz App 165; 462 P2d 858 (1969); *In the Matter of the Estate of Shew,* 48 Wash 2d 732; 296 P2d 667 (1956); *In re Estate of Pierce,* 245 Iowa 22; 60 NW2d 894 (1953); *Baker National Bank v Henderson,* 151 Mont 526; 445 P2d 574 (1968); *Chalaby v Driskell,* 237 Or 245; 390 P2d 632 (1964); *Continental Coffee Co v Estate of Clark,* 84 Nev 208; 438 P2d 818 (1968); *New York Merchandise Co v Stout,* 43 Wash 2d 825; 264 P2d 863 (1953).

But see Restatement 2d, Judgments (Tentative Draft No. 5, 1978), § 5, pp 33-34; *Allan v Allan,* 236 Ga 199; 223 SE2d 445 (1976); *Freitas v Gomes,* 52 Hawaii 145; 472 P2d 494 (1970); Note, *Requirements of Notice in In Rem Proceedings,* 70 Harv L Rev 1257, 1270 (1957).

Whether probate court proceedings are *in rem* or not, see *Mullane v Central Hanover Bank & Trust Co, supra,* pp 312-313; *Shaffer v Heitner,* 433 US 186, 206; 97 S Ct 2569; 53 L Ed 2d 683 (1977), Williams' action is *in personam.* The effect of the closing of the decedent's estate was to divest her of her *in personam* cause of action.

*Fjerstad Estate*[30] was decided before this estate

---

[30] *In re Fjerstad Estate,* 47 Mich App 100; 209 NW2d 302 (1973).
A statute provides in part:

"In all cases where notice has been given solely by publication, as aforesaid, copies of such notice shall be sent by the petitioner, fiduciary or his attorney by registered or certified mail, with return receipt demanded, at least 14 days prior to the time appointed therein for hearing, *to all persons appearing at the time of such mailing from the records of the estate or proceeding with respect to which such notice is given to have an interest therein,* and such copies shall be mailed as aforesaid to the persons entitled thereto *at their respective last known addresses:* Provided, however, That such service by registered or certified mail may be dispensed with whenever the names or addresses of such interested persons are unknown and cannot be ascertained by the exercise of *reasonable diligence* or whenever such interested persons are unborn, unascertained *or have only contingent future* interests, or have signed a petition for an order of said court with respect to which such notice by registered or certified mail would otherwise be required, or by writing filed in said court have waived such notice." MCL 701.32(b); MSA 27.3178(32)(b).

This Court has not heretofore considered the construction of the foregoing statute, which was amended (1951 PA 253) to provide substantially as above shortly after *Mullane* was decided. It is subject to the construction that a person who has a claim against an estate and whose interest appears from "records of the estate" separate from the probate court file itself is entitled to mailed notice. The court rules do not appear to have placed that construction on the statute.

PCR 18, in effect when Garnett's estate was in probate, provided:

"Sec 1. Service and Proof of Service.

*      *      *

"B. In all cases where notice has been given by publication, as provided by law, on the hearing of any of the following: * * * hearing on claims of any decedent * * * the petitioner or fiduciary, as the case may be, or his attorney, shall cause notice by personal service or by registered, certified, or ordinary mail to be given all known interested parties, whose existence and whereabouts are known to the petitioner or fiduciary, or can be ascertained by the exercise of reasonable diligence, at least 14 days before the date originally set for hearing, or any adjournment thereof, unless such notice is waived under section 34 of chapter 1 of the *probate code.*

*      *      *

"Sec 2. Interested Parties Defined.
"A. * * *

*      *      *

"9. *In the hearing on claims* of any decedent or ward, the beneficiaries of any testate estate, the heirs-at-law of any intestate estate, and the presumptive heirs-at-law of any ward, are interested parties."

The Probate Court Rules, effective April 1, 1973, defined interested parties as follows:

was closed. It has not been the practice of the probate courts to require such notice to be sent.

The only remedy which *might* be appropriate would be to order that Will Garnett, Jr., who received the assets of the probate estate, reimburse the plaintiff. But Garnett, although named as a defendant, does not appear to have been served[31] and therefore any declaration by us on the notice issue would not be binding on him.

Our colleague criticizes our suggesting on our own initiative an alternative basis of disposition and ordering further briefing. We did so to avoid deciding the adequacy of present probate court notice procedures in a case where the claimant cannot recover out of or in respect to the assets of a probate estate.

We reverse and remand to the circuit court for trial. Costs to appellant.

---

*"Specific Proceedings.* Subject to * * * PCR 109.1 * * * and to such specific determination as may be ordered by the court in instances in which parties shall not be defined by statute or these rules, interested parties in any

* * *

"(9) Hearing on *contested* claims are

"A. Claimant

"B. Fiduciary as a necessary party to represent the estate

"C. Additional parties who may intervene shall include:

"[1] Beneficiaries of any testate estate

"[2] Heirs at law of any intestate estate

"[3] Presumptive heirs at law of the ward, and the ward in guardianship

"[4] Creditors whose claims have been filed and remain unpaid." PCR 109.2.

*In re Fjerstad Estate,* held that a person having a cause of action in negligence against a decedent is entitled under the foregoing statute to mailed notice of the hearing on claims unless his address is unknown and cannot be ascertained. In the instant case the Court of Appeals reached the opposite conclusion. 70 Mich App 589, 595; 246 NW2d 312 (1976). Our disposition makes it unnecessary to resolve this conflict.

[31] There is no return of service in the circuit court file indicating that he was served, nor has an appearance or answer been filed in his behalf.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, FITZ-
GERALD, and BLAIR MOODY, JR., JJ., concurred with
LEVIN, J.

RYAN, J. *(dissenting)*. I respectfully dissent.

I would reach the issue that this Court chose to
address when it originally granted leave to appeal
in this case.

As my brother correctly states, this Court
granted leave to appeal to determine whether a
person having a cause of action for negligence
against a decedent is entitled to actual notice of
the time for filing and the hearing on claims
against the decedent's estate. Not satisfied to ad-
dress the issue for which leave was granted, the
Court subsequently issued a supplemental order
requesting the parties to brief the issues
"[w]hether *In re Curzenski Estate,* 384 Mich 334
[183 NW2d 220] (1971), should: (a) be overruled
and, if so, (b) whether there is any need to reach
and decide the issue of whether probate court
notice procedures are constitutionally [adequate]".

It is indeed a novel approach in our adversary
system for the appellate court to conjure up issues
and posit arguments for parties who failed to raise
those issues on their own. Even more troublesome
to me, however, is the fact that the Court's supple-
mental order did not adequately apprise the par-
ties of the issue that the Court wanted to address
and consider. The issue that the Court apparently
wanted to decide was whether the Probate Code
may properly be interpreted as precluding the
bringing of all actions against the personal repre-
sentative within the applicable limitation period
but after the three-month bar[1] following the clos-
ing of the estate. The order, however, instructed

---

[1] MCL 701.19; MSA 27.3178(19).

the parties to consider whether *In re Curzenski
Estate* should be overruled. A fair reading of that
case would lead one to conclude that the holding
in *Curzenski* was that liability insurance is not an
"after discovered asset" within the meaning of
MCL 704.56; MSA 27.3178(307), and therefore a
person with a negligence claim against the estate
is precluded from having the estate reopened in
order to sue the personal representative and re-
cover insurance proceeds. My colleagues, on the
other hand, state that *Curzenski* stands for the
proposition that an action cannot be commenced
in circuit court directly against the personal repre-
sentative of an estate after it has been closed. The
Court then proceeds to overrule that proposition.

While there is dictum in *Curzenski* to that ef-
fect, it is clear that the parties were not fairly
apprised that such was the proposition that this
Court was instructing them to address. In fact, the
parties did not know how the *Curzenski* case was
relevant to the issues they briefed[2] and told us so.

The ramifications of the Court's opinion are
significant.

___

[2] It is interesting to note that plaintiff, who would prevail in the
instant action by virtue of overruling *Curzenski*, states in her brief
that she cannot answer the question posed by the supplemental order
and attempts to distinguish *Curzenski*:

"We find that we cannot directly answer all of the questions as
stated. We hope that what follows will satisfactorily explain our
inability to fully respond directly. We also submit what we believe to
be pertinent to the area of concern indicated by the questions of the
Court.

"We cannot make any direct statement as to whether *In re Curzen-
ski Estate, supra,* should be overruled in deciding this case because
there are material factual differences in these cases. We believe the
facts of *Curzenski* were that the claimant had actual knowledge of
the probate proceedings and of the asset of the estate claimed to be
'after-discovered'. Here, there was no actual knowledge of the probate
proceedings (see paragraphs 21-26, Complaint, 8a-9a) and no claim is
being made regarding after-discovered assets. Thus, decision in this
case can be reached without there being a necessary relationship with
*Curzenski Estate.*"

In search of a remedy for plaintiff and with an
eye to a collectible defendant, in this instance the
Motor Vehicle Accident Claims Fund, the Court
would hold that an action may be commenced
directly against the personal representative at any
time during the applicable statutory limitational
period, although the decedent's estate has been
closed for more than three months, with recovery
being limited to sources other than the assets of
the probated estate.[3] In such cases where the
claimant has failed to file his claim in probate
court, the administration of the estate is to be
deemed "incomplete" within the meaning of MCL
704.56; MSA 27.3178(307), and upon petition the
estate may be reopened. In so holding, the Court
has not only overruled *In re Curzenski Estate,* but
has also ignored a long line of firmly established
precedent.[4]

Faced with a far more sympathy-evoking tardy
claimant wishing to reopen a decedent's estate to
recover probate assets, this Court, in *In re Cook
Estate,* 366 Mich 323, 326-328; 115 NW2d 98
(1962), cautioned against the judicial approach
taken by the majority wherein it stated:

---

[3] There is no indication from plaintiff's briefs that she is not
seeking recovery from the distributed assets of the estate.

More important is the question left unanswered by the Court's
opinion: What is the effect on heirs or devisees who have received
their distributed shares when an insurance company becomes insol-
vent prior to satisfying judgment or when a plaintiff's judgment
exceeds the limits of liability of a given policy? See *In re Critchell
Estate,* 361 Mich 432, 442; 105 NW2d 417 (1960).

[4] Although not exhaustive, the following cases have held that all
claims against the estate are barred which are not filed before the
estate closes or within three months thereafter: *In re Cook Estate,*
366 Mich 323; 115 NW2d 98 (1962); *Melvin v Reading,* 346 Mich 348;
78 NW2d 181 (1956); *Manufacturers National Bank of Detroit v
Sutherland,* 16 Mich App 286; 167 NW2d 894 (1969); *In re Estate of
Jeffers,* 272 Mich 127; 261 NW 271 (1935); *Coughlin v Wineman,* 260
Mich. 469; 245 NW 779 (1932); *In re Thayer's Estate,* 210 Mich 696;
177 NW 978 (1920), and cases cited therein.

"This Court takes judicial notice of the fact that because of errors or omissions in probate proceedings, estates of decedents are reopened, sometimes years after the completion of the original probate. To adopt the interpretation of the statute contended for by petitioners would put an end to certainty. It would open the way into the unforeseeable future for the filing of tardy claims, not because of their merits but because of some oversight, error, or omission in the administration of an estate.

\* \* \*

"In this case it is alleged that one of the plaintiffs, a minor, suffered substantial injuries and that she had no general guardian. *The fashioning of a remedy for these petitioners is not the province of this Court.* See *Morgan v Hamlet,* 113 US 449; 5 S Ct 583; 28 L Ed 1043 [1885]; *Van Haaren v Tierney,* 180 Mich 192 [146 NW 660 (1914)]. *The problem before this Court is to determine the correct interpretation of the statutory law pertaining to the administration of estates.*

\* \* \*

" 'An administrator under the statute is charged with the prompt closing of estates, likewise a creditor should be charged with the prompt filing of claims against estates.' McAvinchey, Michigan Probate Practice, p 90.

"The legislature has provided a definite and final procedure for the handling of claims against estates. See [MCL 708.1 *et seq.;* MSA 27.3178(411) *et seq.].* See especially [MCL 708.18; MSA 27.3178(428)], and [MCL 708.22; MSA 27.3178(432)]. Probate courts are statutory courts. *In re Brown's Estate,* 280 Mich 176 [273 NW 436 (1937)]; *In re Estate of Jeffers,* 272 Mich 127 [261 NW 271 (1935)]. Once these procedures have been followed and the time has run, those who stand without, howsoever meritorious their claims, are forever debarred. *In re Estate of Jeffers, supra; In re Thayer's Estate,* 210 Mich 696 [177 NW 978 (1920)]." (Emphasis supplied.)

It has been long standing precedent in this jurisdiction that a statute limiting the time during which claims against a deceased person may be filed is to be strictly construed.

"This statute has been construed with strictness, its purpose being to secure the speedy settlement of estates in the probate court. *Winegar v Newland,* 44 Mich 367 [6 NW 841 (1880)]; *Seilnacht v Wayne Probate Judge,* 201 Mich 536 [167 NW 837 (1918)]; *Second National Bank of Saginaw v Gamble,* 227 Mich 31 [198 NW 340 (1924)]." *Lawrence v DeBoer,* 273 Mich 172, 177-178; 262 NW 660 (1935).

Accord, *In re Thayer's Estate,* 210 Mich 696, 705-706; 177 NW 978 (1920).

Until today's decision, the firmly entrenched rule in this state with respect to reopening estates for tardy claimants has been the following:

"Once all of the steps for the administration of a decedent's estate, including the hearing on claims, have been concluded, and the estate is closed, the statute provides a 3 month period during which tardy claimants may seek the reopening of the estate for the hearing of their claims, but such period is not extended by reason of the reopening of the estate for the purpose of correcting errors or omissions, which latter reopening might occur even years later." 3 Moore & Denison, Michigan Practice: Probate Law and Practice (2d ed), 1978 Pocket Parts, § 801, p 127.

Thus, a claimant must file his claim in probate court before the estate closes or within three months thereafter. Similarly, a claimant who chooses to pursue his remedies in circuit court pursuant to MCL 708.22; MSA 27.3178(432) rather than file his claim in probate court must do so before the estate closes.

"The only question requiring present determination is whether the defendant is a suable fiduciary under [MCL 708.22; MSA 27.3178(432)]. We all agree that she is and will remain so until her decedent's estate is actually closed as provided in the Probate Code. We are

agreed, too, that the estate has not as yet been closed for want of a probate order of closing." *Kangas v Lefko,* 369 Mich 341, 345; 119 NW2d 645 (1963) (BLACK, J., concurring).

While the Court is free to overrule existing precedent, we must still contend with the statutory provision before us. MCL 704.56; MSA 27.3178(307) provides in pertinent part:

"The court may, upon petition having been filed after the closing of an estate, cause the same to be reopened for the purpose of administering after discovered assets or to complete the administration of the same in case said estate was closed without being fully administered by the fiduciary or court, or for the correction of typographical errors, omissions, or misdescription of property contained in any order or record in said estate, and for any of these purposes may appoint a successor fiduciary: *Provided, however, That the failure of a claimant to file a claim against said estate during the original administration thereof shall not be a cause for reopening the same or for the appointment of a successor fiduciary."* (Emphasis supplied.)[5]

In holding that a tardy claimant may be permitted, upon petition, to reopen an estate, the Court ignores the plain and unambiguous meaning of the statutory language and thus violates a well recognized canon of statutory construction.

" 'There are certain well-settled rules for the construction of statutes, which no court can safely disregard. Where the statute is plain and unambiguous in its terms, the courts have nothing to do but to obey it. They may give a sensible and reasonable interpretation to legislative expressions which are obscure, but they have no right to distort those which are clear and

---

[5] The corresponding provision of the Revised Probate Code is MCL 700.593; MSA 27.5593.

intelligible. The fair and natural import of the terms employed, in view of the subject matter of the law, is what should govern.' " *Jones v Grand Ledge Public Schools,* 349 Mich 1, 9; 84 NW2d 327 (1957), quoting *People ex rel Twitchell v Blodgett,* 13 Mich 127, 167-168 (1865) (COOLEY, J.).

The clear and unambiguous meaning of the proviso[6] in the foregoing statutory provision leaves no doubt that it precludes finding that the administration of an estate is incomplete and precludes reopening it for "failure of a claimant to file a claim against said estate during the original administration thereof". Whether the claimant expects recovery from assets previously distributed by the personal representative, from proceeds under a liability policy or a government fund is immaterial in the face of the clear and unambiguous language of the statute.

In an attempt to avoid the statutory mandate that forbids reopening an estate after three months following its closing order, and thereby avoiding the effect of a shorter statute of limitations under the Probate Code, the Court merely rewrites the statute. In my view, the task of determining the proper and just period of limitation for claims against a decedent's estate is best left to the Legislature—in fact, is required to be left there.

The task of the judiciary is to interpret the statute before us.[7] The issue we chose to address in

---

[6] In referring to the instant proviso, this Court stated in *Melvin v Reading, supra,* 355, fn:

"As stated in *United States v Morrow,* 266 US 531, 534, 535; 45 S Ct 173; 69 L Ed 425 [1925]:

" 'The general office of a proviso is to except something from the enacting clause, or to qualify and restrain its generality and prevent misinterpretation. * * * Its grammatical and logical scope is confined to the subject matter of the principal clause.' "

[7] See *In re Chamberlain's Estate,* 298 Mich 278; 299 NW 82 (1941),

granting leave to appeal was whether a person having a cause of action for negligence against a decedent is entitled to actual notice of the time for filing and the hearing of claims against the decedent's estate. That is the issue raised and argued by the parties and thus properly before this Court. I therefore proceed to address it.

I

Plaintiff contends, first, that she was an "interested person" under MCL 701.32; MSA 27.3178(32),[8] and was therefore entitled to actual notice of the claims hearing for decedent's estate, failing which she was entitled to pursue her claim against the decedent's closed estate. Plaintiff relies on *In re Fjerstad Estate,* 47 Mich App 100; 209 NW2d 302 (1973).[9]

MCL 701.32; MSA 27.3178(32) provides in pertinent part:

"In all cases where notice has been given solely by publication, as aforesaid, copies of such notice shall be sent by the petitioner, fiduciary or his attorney by

wherein this Court was also confronted with construction of the Probate Code.

[8] This provision has been repealed and superseded by 1978 PA 543. MCL 600.854; MSA 27A.854 provides that notice shall be governed by Supreme Court rule.

[9] The plaintiff in *Fjerstad* was injured when she slipped and fell on a patch of ice outside decedent's coin laundry. She alleged that decedent's insurance carrier investigated the accident and that, in fact, decedent's husband was on the premises when the accident occurred and had knowledge of plaintiff's injury. The Court of Appeals observed that MCL 708.2; MSA 27.3178(412), provides that once the date for filing claims and a hearing on the claims is fixed, "the court shall forthwith cause notice to prove claims and of the hearing thereon to be given by publication as provided in sections 32 to 35 of chapter 1 of this act". The Court concluded that when this provision is read in conjunction with § 32 (MCL 701.32; MSA 27.3178[32]) it becomes apparent that the term "interested persons" means anyone having a claim against the estate. 47 Mich App 103-104.

registered or certified mail, with return receipt demanded, *at least 14 days prior to the time appointed therein for hearing, to all persons appearing at the time of such mailing from the records of the estate or proceeding with respect to which such notice is given to have an interest therein,* and such copies shall be mailed as aforesaid to the persons entitled thereto at their respective last known addresses: Provided, however, That such service by registered or certified mail may be dispensed with whenever the names or addresses of such interested persons are unknown and cannot be ascertained by the exercise of reasonable diligence." (Emphasis supplied.)

A person having "an interest therein" for purposes of the aforementioned provision is not defined in the Probate Code. The Court of Appeals, in deciding this case of *Williams,* therefore, looked to Probate Court Rule 18, in effect when it commenced, to obtain the definition of "interested party".

PCR 18, § 1(B) provides:

"In all cases where notice has been given by publication, as provided by law, on the hearing of any of the following: * * * hearing on claims of any decedent or person under guardianships * * * the petitioner or fiduciary, as the case may be, or his attorney, shall cause notice, by personal service or by registered, certified, or ordinary mail to be given *all known interested parties,* whose existence and whereabouts are known to the petitioner or fiduciary, or can be ascertained by the exercise of reasonable diligence, at least 14 days before the date originally set for hearing." (Emphasis supplied.)

PCR 18, § 2(A)(9) provides:

"In the hearing on claims of any decedent or ward, the beneficiaries of any testate estate, the heirs-at-law

of any intestate estate, and the presumptive heirs-at-law of any ward, are interested parties."

Since the court rule did not include claims by any creditors, the Court of Appeals concluded that plaintiff was not an "interested person" for purposes of receiving actual notice pursuant to MCL 701.32; MSA 27.3178(32), and therefore her tardy claim was properly barred under MCL 701.19; MSA 27.3178(19).

I cannot accept that interpretation of then-existing PCR 18.[10] I do not believe that when this Court promulgated PCR 18 it intended it to be an exhaustive list of interested parties for purposes of MCL 701.32; MSA 27.3178(32). A common-sense reading of the language of the rule suggests that the persons listed were those who, in all circumstances, were to be understood as being "interested parties" and not that it was an exclusive listing of such persons as though there can be no others who in an appropriate case would be "interested". The rule was not meant to exclude other known persons from receiving actual notice in claims hearings where they have significant interests in the assets of the estate and where the disposition at such a hearing would materially affect their rights.

Support for this interpretation of "interested parties" under Rule 18 may be found in § 2(C)[11] of

---

[10] The present rule, PCR 106.3(1), provides that a copy of the published notice "must be served personally or by mail on each interested party whose address is known". PCR 109.2(9) provides that interested parties in any hearing on contested claims are the claimant, the fiduciary, and additional parties who may intervene, including beneficiaries, heirs *and creditors whose claims have been filed.*

[11] PCR 18, § 2(C) provides:

"If notice is required under section 1 of this rule, any judge of probate may require notice to be given to persons not specified as interested parties in subsection A of this section, and the proponent, petitioner, or fiduciary, or his attorney, may cause notice to be given

the same rule which authorizes the probate judge, where actual notice is required to be given to known interested parties, to require actual notice be given to persons not specified as interested parties. Thus, this section contemplates the existence of additional interested parties for purposes of various probate proceedings although they are not specifically mentioned in the previous section.

In addition, authors Moore and Denison in their treatise on Michigan probate practice include creditors as interested parties under Rule 18 for purposes of receiving actual notice where their rights may be affected:

"All interested parties must be served. Interested parties are the following: namely, the devisees and legatees, fiduciaries and beneficiaries of a trust under the will, the heirs-at-law of the testator, or intestate decedent, the possible beneficiaries, the principal and surety on any bond, the presumptive heirs-at-law of any ward, the *creditors,* and the Department of Social Welfare of the county of which the ward is a resident or the Attorney General on behalf of the State of Michigan. *Such persons are interested persons in any proceedings, motion, petition, or hearing, wherein their interest or right may be affected.* In all cases a guardian ad litem is an interested party if the person he represents is an interested party. The court may require notice to be given to persons not specified as interested parties and the proponent, petitioner, or fiduciary, or his attorney, must cause notice to be given to any other interested parties." (Emphasis supplied.) 3 Moore & Denison, Michigan Practice: Probate Law and Practice (2d ed), § 475, pp 157-158.

It therefore follows that plaintiff, as a potential tort creditor, may be an interested party for purposes of MCL 701.32; MSA 27.3178(32), and PCR

to persons not specified as interested parties in subsection A of this section."

18, § 1(B) and thus entitled to actual notice of hearings on claims if she qualifies as a *"known interested party"* pursuant to PCR 18, § 1(B). Whether or not plaintiff was known to the personal representative of decedent's estate will be discussed *infra.*

## II

Plaintiff maintains, that in addition to the statutory notice requirement she has a due-process entitlement to actual notice. She cites *Mullane v Central Hanover Bank & Trust Co,* 339 US 306; 70 S Ct 652; 94 L Ed 865 (1950), and *Dow v Michigan,* 396 Mich 192; 240 NW2d 450 (1976).

The threshold question to be addressed in resolving the due-process issue is whether plaintiff has a constitutionally protected property interest in the estate. Although her interest as a creditor may be "intangible", it is settled that "the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money". *Board of Regents of State Colleges v Roth,* 408 US 564, 571-572; 92 S Ct 2701; 33 L Ed 2d 548 (1972). Further, property interests are not created by the Constitution but rather are created and defined by existing rules such as state law. *Roth, supra.* In turning to our own state law, it is clear that this Court has recognized that an accrued cause of action is a significant interest in property within the meaning of the Due Process Clause.

"It is axiomatic that the constitutional provision of due process extends to protect that 'property' construed to be a vested right and that generally an accrued right of action is a vested property right which may not be arbitrarily impinged. See 16 Am Jur 2d, Constitutional

Law, §§ 421 *et seq." Grubaugh v City of St Johns,* 384 Mich 165, 170; 180 NW2d 778 (1970).

Since plaintiff's accrued cause of action in tort is an interest in property within the meaning of the Due Process Clause, plaintiff may not be deprived of that interest without the procedural protection provided by that clause which guarantees notice and an opportunity to be heard appropriate to the nature of her case. *Mullane, supra,* p 313. The United States Supreme Court has declared the notice requirement under the Due Process Clause this way:

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. * * * But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied." *Mullane, supra,* pp 314-315.

The second inquiry under a due-process analysis is to decide what type of notice is required under the given facts in order to satisfy the *Mullane* standard. *Mullane* does not purport to announce a hard and fast rule for determining when actual notice is required.

"The Court has not committed itself to any formula achieving a balance between these interests in a particular proceeding or determining when constructive notice may be utilized or what test it must meet. Personal service has not in all circumstances been regarded as indispensable to the process due to residents, and it has more often been held unnecessary as to nonresidents. We disturb none of the established rules on these subjects. No decision constitutes a controlling or even a very illuminating precedent for the case before us." *Mullane, supra,* p 314.

Instead, the Court employed a balancing test, weighing the state's interest in avoiding the burdens of providing actual notice against the individual's interest in receiving adequate notice. This Court has held that "[t]he kind of notice required depends on the circumstances of the case and the availability of other means in both a theoretical and economic sense". *Alan v Wayne County,* 388 Mich 210, 351; 200 NW2d 628 (1972).

Our task of examining the circumstances and balancing the interests in an attempt to determine the type of notice required is aided by past determinations. In *Mullane,* the Court held that mailed notice to known beneficiaries of a common trust fund must be provided where the trustee had the names and addresses of income beneficiaries in its books.

In *Dow, supra,* this Court held that in proceedings to foreclose a statutory lien for nonpayment of taxes the state must provide notice by mail "before sale to the person to whom tax bills have been sent and to 'occupant'", and after the sale, "formal notice to all owners of significant property interests of the constitutionally required opportunity for hearing and redemption". 396 Mich 212. The Court further found in *Dow* that the obligation to provide mail notice would not seriously burden the government by observing that tax title buyers have long been required, and apparently have been able, to provide mail notice to the owners of significant interests in the land purchased after nonpayment of taxes. 396 Mich 208-209. Noting that real property interests of record are easily identifiable, the Court held that if the interests were of record or if the treasurer or assessor was aware of the interests, mailed notice is required. 396 Mich 210-211.

In *City of New York v New York, N H & H R Co,* 344 US 293; 73 S Ct 299; 97 L Ed 333 (1953), the Court held that a lien creditor was entitled to receive actual notice of the time to file its claims against the bankrupt. It is reasonable to conclude that the Court found the duty to provide actual notice would not be too burdensome on the receiver since the instant creditor and the character of its claims could be easily ascertained from the bankrupt's records.[12] 344 US 296. In addition, since the plaintiff had a lien on real property, it is likely that the lien was recorded with the appropriate register of deeds.

Although a potential tort creditor's interest is on equal footing for purposes of due process with the interests of a beneficiary of a trust or a title holder of real property or lien creditor, there *may be* a significantly different and greater burden imposed upon the personal representative obligated to ascertain the existence of a potential tort claimant. For example, in requiring a personal representative to give actual notice to all potential tort claimants, he or she will be required to determine from the records of the estate the existence of a claim, the validity of the claim, and the likelihood that the claimant will pursue his legal rights against the estate. In other words, such a determination could entail making a legal judgment, in the sense of forming a professional opinion, whether or not another person had a viable tort

[12] One commentator observed that the obligation of providing actual notice would not be too burdensome under these facts:

"The obvious conclusion drawn is that the receiver was obligated to scan his records to determine who the bankrupt's creditors were, and to inform them personally that their claims were subject to being cut off. It is not a heavy burden to search a business's 'accounts payable', and mail a notice that some action must be taken by the creditor." O'Dea, *Adequacy of Notice—Due Process,* 32 Wash L Rev 165, 170-171 (1957).

claim against the estate and one that is likely to be pursued. This is a significantly greater burden than is placed upon a receiver in bankruptcy, for example, who may easily ascertain the existence and character of a lien creditor's interest from an examination of the bankrupt's personal records of accounts payable or from the register of deeds. However, once a tort claimant files a claim in probate court, files a complaint in circuit court, or otherwise indicates to the personal representative that he will pursue his legal rights against the estate, the existence and character of the tort creditor's claim on the decedent's estate also becomes easily ascertainable for the personal representative and there is no longer a requirement that a legal judgment be made as to the validity of a potential claim.

This Court has declared heretofore that the kind of notice required depends on the circumstances of the case. *Alan, supra.* A personal representative is obligated to give actual notice under the Probate Code and under the Constitution only to those persons who are "known interested parties".[13] I would hold that a tort claimant[14] is known and therefore entitled to personal notice of the time for filing and hearing on claims when he has taken some steps toward pursuing his legal remedies against the estate (*i.e.,* either by filing a claim or complaint or engaging in settlement negotiations

[13] The knowledge necessary to characterize one as a *known* interested party encompasses a personal representative's knowledge of the existence of a claim as well as knowledge of the claimant's identity and address. The Probate Code contemplates mailed notice only in those circumstances when such knowledge is easily acquired or the personal representative in the exercise of due diligence can easily acquire this knowledge.

[14] I intimate no view as to when a tort claimant becomes known when the nature of the injury is such that it is not discovered or in the exercise of due diligence it is not discoverable until after the three-month bar following the closing of an estate.

with a representative of the decedent) or has manifested an intent to pursue his legal rights against the estate and has communicated that intent in some fashion to the personal representative. The mere fact that a personal representative has knowledge of an occurrence which could conceivably lead to potential liability is not sufficient to make a claimant known since that knowledge does not remove the overwhelming burden of requiring the personal representative to make a legal judgment of expert character based on mere probabilities.[15] The accommodation reached by this standard providing for actual notice to certain interested persons who have made their interests "known" and notice by publication to other persons, is compatible with due process.

The trial court did not make any finding on the issue whether defendant knew of the existence of plaintiff and of her possible claim. Since the factual issue of whether plaintiff or her claim or her intention to file a claim was known to defendant was not framed by defendant's motion for accelerated judgment, plaintiff was not obliged to respond to that issue and the issue was not before the trial court for decision. I would therefore remand this cause to the trial court for a determination whether, in accordance with the standards announced herein, the administrator was chargeable

[15] I note the United States Supreme Court in *Eisen v Carlisle & Jacquelin*, 417 US 156, 175-176; 94 S Ct 2140; 40 L Ed 2d 732 (1974), has required that mailed notice be given to over two million persons in a class action who were "identifi[able] through reasonable effort". However, the Court observes that the names and addresses of the class members were easily ascertainable by comparing the computerized records of various firms. Additionally, and in contrast to the instant facts, in *Eisen* the existence and character of the interest was readily identifiable from the given records. Also, it cannot go unnoticed that the burden in *Eisen* was placed on a member of a class whose interests he was representing; under the instant facts, of course, the interests involved are adverse.

with knowledge of claim by plaintiff against the estate and thus obligated to give plaintiff actual notice of the time for filing and the hearing on claims.